UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICO ISAIH HAIRSTON,

    Plaintiff,

  v.                                     Case No. 2:17-cv-581
                                            Chief Judge Edmund A. Sargus, Jr.
                                            Magistrate Judge Chelsey M. Vascura

**FRANKLIN COUNTY SHERIFF'S
OFFICE CENTER MAIN JAIL 1,** *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, Rico Isaih Hairston, who is proceeding without the assistance of counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Franklin County Sheriff's Office Center Main Jail 1 and three county employees. By Order dated December 21, 2017, the Court dismissed all of Plaintiff's claims with the exception of his claim against Franklin County Sheriff's Office Center Main Jail 1 and Deputy Burke based upon allegations that, in May and June 2017, Burke opened mail from the United States District Court addressed to Plaintiff outside of Plaintiff's presence in violation of the First Amendment to the United States Constitution.

On July 12, 2018, Plaintiff moved for summary judgment on his remaining claims. (ECF No. 66.) Defendants filed a memorandum in opposition on October 3, 2018 (ECF No. 72), and Plaintiff's time to file a reply has now expired. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART.**

# I. BACKGROUND

At all relevant times, Plaintiff was being held at correctional facilities maintained by Defendant Franklin County Sheriff's Office ("FCSO"). Plaintiff alleges that his legal mail was opened outside his presence on three occasions: May 12, 2017; June 15, 2017; and June 21, 2017. (Pl.'s Statement, ECF No. 72, PAGEID #452–53.) Based on these incidents, Plaintiff filed a complaint with the FCSO. (*Id.*)

An FCSO investigation was conducted by Sergeant Karen Johnson. (Johnson Report, ECF No. 72, PAGEID #454–462.) Sgt. Johnson took photos of the envelopes Plaintiff alleged were already open when delivered to him and noted that each were sent from the "Office of the Clerk, United States District Court, Southern District." (*Id.* at PAGEID #454.) The FCSO ultimately determined that Plaintiff's legal mail had been opened by Defendant Debra Burke. Burke had a "sit down/oral reprimand" with Sergeant Christina McDowell, who told Burke that the FCSO's policy was that legal mail was not to be opened outside the presence of the inmate to whom it was addressed. (*Id.* at PAGEID #460; McDowell Statement, ECF No. 72, PAGEID #469.)

Burke gives conflicting explanations for why she opened Plaintiff's legal mail. In her statements to Sgt. Johnson, Burke stated that she "[did] not recall any specifics" of the May 12 and June 15 incidents, "but allegedly, I mistakenly opened legal mail for a Rico Hairston. I apologize profusely for any error made and will pay closer attention to opening mail moving forward." (Johnson Report, ECF No. 72, PAGEID #460). As for the June 21 incident, Burke stated, "It has been stated that I opened legal mail for Rico Hairston but I do not recall doing so. If I did, it was in error. I apologize for any inconvenience and will be more attentive in the future." (*Id.*, PAGEID #461.)

However, during her sit down/oral reprimand with Sgt. McDowell, "Burke stated that she did in fact open up the legal mail because it came from a court system. She went on to say that she was taught on her initial job training that it was a matter of public record and not subject to client confidentiality so it was to be opened and searched." (McDowell Statement, ECF No. 72, PAGEID #469.) Moreover, Burke informed Sgt. McDowell that "she had opened such mail in the past on numerous occasions. She further went on to say that other CSCs handled such legal mail in the same manner and they should be notified also, to make sure it did not re-occur, as she was not the only one trained in such a manner from Deputy staff when she started her position." (*Id.*)

Sgt. McDowell sent an email to a number of correctional facility staff members on June 16, 2017. (Email, ECF No. 72, PAGEID #470.) The email emphasized that regardless of whether legal mail came from an attorney or a court system, legal mail may not be opened except by deputy staff in front of the inmate to whom it is addressed. (*Id.*) Burke was a recipient of this email, which predated Burke's opening of Plaintiff's legal mail on June 21, 2017. (*Id.*)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.  ANALYSIS

**A.  Standards governing inmates' legal mail**

"A prisoner's right to receive mail is protected by the First Amendment . . . ." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). The protection is heightened when the incoming mail is legal mail. *Id.* at 874. Prison officials may open and inspect a prisoner's "legal mail" only in the presence of the prisoner "in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)). Prison policy or other regulations may, therefore, prohibit the opening of legal mail outside the presence of the prisoner. In the alternative, the United States Court of Appeals for the Sixth Circuit Court has approved an opt-in system in which prison officials may open any mail outside a prisoner's presence unless the prisoner has affirmatively requested that mail sent

4

by a court or counsel be opened only in the prisoner's presence. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), cert. denied, 507 U.S. 973 (1993). The Court approved that system as a way to balance the prison's needs against the prisoner's rights but stressed that an opt-in system would be constitutionally sound only if prisoners received written notice of the policy. *Sallier*, 343 F.3d at 874. Accordingly, when a prison official is on notice, either by virtue of prison policy or regulation or prisoner request, the official may not open legal mail outside the prisoner's presence. "[M]ail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise" or when prison policy or regulation provides the same protection to all prisoners in a facility or system. *See id.* at 877.

Government officials who perform discretionary functions are generally shielded from liability for damages so long as their conduct does not violate a constitutional or statutory right that was "clearly-established" and "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In determining whether a constitutional right is clearly established at the time of the actions in question, the Court must "'look first to the decisions of the Supreme Court, then to decisions of [the Court of Appeals] and other courts within our circuit, and finally to decisions in other circuits.'" *Sallier*, 343 F.3d at 878 (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)).

A governmental entity cannot be held responsible for a constitutional deprivation by its employee or official unless the deprivation is directly causally linked to a governmental policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000). "A court's task is to identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the violation." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784–85 (1997).

Nevertheless, "an act performed pursuant to a 'custom' that ha[s] not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryant Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To establish governmental liability under the widespread-practice theory, however, the "custom must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507–08 (6th Cir. 1996).

**B.     Plaintiff is not entitled to summary judgment against Defendant FCSO.**

Plaintiff asserts that his First Amendment rights were violated when Burke opened his legal mail outside his presence. It is undisputed that Burke did so open Plaintiff's mail. (Defs.' Mem. in Opp. 6, ECF No. 72) ("It is clear from the investigation of FCSO that at least on two occasions Defendant Burke opened Plaintiff's legal mail outside his presence.") Plaintiff also asserts, and Defendants do not dispute, that Burke's actions were in violation of FCSO's mail policy. (*Id.* at 4) ("[I]t is clear that FCSO had a clearly established policy prohibiting the opening of mail from courts outside the presence of a prisoner.") Because the FCSO cannot be held responsible for a constitutional deprivation by Burke unless the deprivation is directly causally linked to an FCSO practice or custom, Plaintiff cannot succeed on his claim against FCSO if the policy existed as argued by the parties. *Monell*, 436 U.S. at 691; *Gregory*, 220 F.3d at 442.

However, it is clear from the investigation report and statement submitted by Defendants in opposition to summary judgment that there is a question of fact as to whether the FCSO really did have such a policy. Although Sgt. McDowell's oral reprimand of Burke and email to other staff indicate that FCSO's policy was not to open legal mail outside the presence of the inmate, Burke's statement to Sgt. McDowell indicates that she and other mail room staff received

training to the contrary—that mail from courts was not subject to attorney-client confidentiality and therefore should be opened and searched.

As noted in a previous Report and Recommendation, Plaintiff could succeed on his claim against the FCSO by proving "a practice at the jail of opening prisoner legal mail outside the prisoners' presence that had become so widespread as to have become a custom with the force of law." (ECF No. 54 at 6.) Burke's report to Sgt. McDowell is evidence of a widespread practice that violates prisoners' First Amendment rights. But before the Court can decide Plaintiff's claims against the FCSO, the fact-finder will need to resolve the discrepancy between the policy as reported by Sgt. McDowell and the practice as reported by Burke. Because Plaintiff has not identified undisputed facts establishing FCSO's widespread practice of opening legal mail from court systems, Plaintiff is not entitled to summary judgment against the FCSO.

Defendants further argue that the FCSO is entitled to qualified immunity because "the actions of FCSO upon learning of the alleged violations demonstrates that its actions were not objectively unreasonable." (Defs.' Mem. in Opp. 5, ECF No. 72.) But Defendants misunderstand the qualified immunity doctrine. The "objective reasonableness" requirement relates to the actions alleged to violate the plaintiff's constitutional or statutory rights (*i.e.*, Burke's opening of Plaintiff's mail), not corrective actions taken to redress the violation (*i.e.*, the FCSO's investigation, reprimand of Burke, and reminder of the policy to mailroom staff). *Harlow*, 457 U.S. at 818. Although the FCSO's corrective actions do appear reasonable and appropriate, they cannot retroactively render Burke's actions reasonable and appropriate. The FCSO has therefore not established at this stage that it is entitled to qualified immunity.[1]

---

[1] Defendants also assert that the FCSO and Burke should be held to a deferential "arbitrary and capricious" standard, citing *Sallier*. (Defs.' Mem. in Opp. 5–6.) However, *Sallier* states that prison officials who open and read *ordinary* incoming mail in an arbitrary and capricious fashion

**C.      Plaintiff is entitled to summary judgment in part against Burke.**

As noted above, Defendants do not dispute that Burke opened Plaintiff's legal mail outside his presence. Nor do Defendants dispute that opening an inmate's legal mail outside the inmate's presence is a violation of a clearly-established constitutional right. Instead, Defendants argue that Burke is entitled to qualified immunity for this constitutional violation. (Defs.' Mem. in Opp. 4–6, ECF No. 72.)

The outcome of Plaintiff's claims against Burke for the May 12 and June 15 incidents will again turn on the FCSO's policy and practice. In the previous Report and Recommendation, the procedural posture required the Court to construe as true Plaintiff's allegations that the FCSO's policy prohibited the opening of incoming mail from courts outside the presence of the prisoner to whom it was addressed. (ECF No. 54 at 4–5.) The Undersigned determined that the FCSO's policy put Burke on notice that she was not to open Plaintiff's mail as set forth in the Court of Appeals' 2003 decision in *Sallier,* meaning that "Burke acted unreasonably in light of that well-established constitutional principle by opening Plaintiff's mail from this Court outside his presence." (*Id.* at 5.) Thus, if the FCSO's policy was consistent with Sgt. McDowell's report, Burke is not entitled to qualified immunity (*Id.*)

On the other hand, "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." *Harlow*, 457 U.S. at 819. Thus, if it was indeed the case that the FCSO had a widespread practice of improperly training its mailroom employees, such that Burke would not have been on notice that opening Plaintiff's mail would violate his

---

violate prisoners' First Amendment rights. 343 F.3d at 873–74. The *Sallier* court also stated that "courts have consistently afforded greater protection to legal mail than to non-legal mail." *Id.* (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)). The "arbitrary and capricious" standard therefore has no relevance to this case.

constitutional rights, she may still be entitled to qualified immunity. As a result, the issues of fact surrounding the FCSO's policy and practice prevent the Court from entering summary judgment against Burke on the first two incidents.

However, qualified immunity cannot apply to the third incident of opening Plaintiff's legal mail on June 21, 2017. It is undisputed that, regardless of the FCSO's past practices, Burke was informed via email from Sgt. McDowell on June 16, 2017, that she was not to open mail from any court system. (Email, ECF No. 72, PAGEID #470.) Yet she did so again on June 21, despite Defendants' assertions that "[a]fter being advised of the correct policy, Burke indicated that she would abide by that policy in the future." (Defs.' Mem. in Opp. 6, ECF No. 72.) Thus, she acted unreasonably in opening Plaintiff's legal mail on June 21, and the qualified immunity defense is not available.

## IV. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that the Court find that Plaintiff is entitled to summary judgment as to liability against Burke as to the third incident of opening Plaintiff's legal mail on June 21, 2017. It is further **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 66) be **DENIED** in all other respects.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE