# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**RICO ISAIH HAIRSTON,**

        **Plaintiff,**

    **v.**                       **Case No. 2:17-cv-581**
                                       **Chief Judge Edmund A. Sargus, Jr.**
                                       **Magistrate Judge Chelsey M. Vascura**

**FRANKLIN COUNTY SHERIFF'S**
**OFFICE CENTER MAIN JAIL 1,** *et al.*,

        **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, Rico Isaih Hairston, who is proceeding without the assistance of counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Franklin County Sheriff's Office Center Main Jail 1 ("FCSO") and three county employees. By Order dated December 21, 2017, the Court dismissed all of Plaintiff's claims with the exception of his claim against FCSO and Deputy Burke based upon allegations that, in May and June 2017, Burke opened mail from the United States District Court addressed to Plaintiff outside of Plaintiff's presence in violation of the First Amendment to the United States Constitution.

On July 12, 2018, Plaintiff moved for summary judgment on his remaining claims. (ECF No. 66.) That motion was denied with the exception of summary judgment in Plaintiff's favor as to liability against Burke as to the third incident of opening Plaintiff's legal mail on June 21, 2017. (ECF No. 84.)

This matter is now before the Court on three motions: Plaintiff's Motion for Judgment, Costs, Economic Damages, and Punitive Damages from Defendant Burke's Liability on Partial

Summary Judgment (ECF No. 87), Defendant FCSO's Motion for Summary Judgment (ECF No. 90), and Plaintiff's Motion to Compel Discovery (ECF No. 86). Plaintiff's Motion for Judgment and Motion to Compel Discovery are fully briefed; but Plaintiff filed no opposition to FCSO's Motion, and the time to do so has now expired. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Motion for Judgment be **DENIED without prejudice to renewal** and that FCSO's Motion for Summary Judgment be **DENIED**. It is further **ORDERED** that, to the extent Plaintiff seeks to compel depositions of FCSO and Burke, Plaintiff's Motion to Compel Discovery is **DENIED**; otherwise, the parties must either supplement their submissions so that the Court may rule on the remaining portions of Plaintiff's Motion to Compel Discovery, or contact the Court to request Court-facilitated mediation in lieu of a ruling.

## I.     BACKGROUND

At all relevant times, Plaintiff was being held at correctional facilities maintained by Defendant Franklin County Sheriff's Office ("FCSO"). Plaintiff alleges that his legal mail was opened outside his presence on three occasions: May 12, 2017; June 15, 2017; and June 21, 2017. (Pl.'s Statement, ECF No. 72, PAGEID #452–53.) Based on these incidents, Plaintiff filed a grievance with the FCSO. (*Id.*)

An FCSO investigation was conducted by Sergeant Karen Johnson. (Johnson Report, ECF No. 72, PAGEID #454–462.) Sgt. Johnson took photos of the envelopes Plaintiff alleged were already open when delivered to him and noted that each were sent from the "Office of the Clerk, United States District Court, Southern District." (*Id.* at PAGEID #454.) The FCSO ultimately determined that Plaintiff's legal mail had been opened by Defendant Debra Burke. Burke had a "sit down/oral reprimand" with Sergeant Christina McDowell, who told Burke that the FCSO's policy was that legal mail was not to be opened outside the presence of the inmate to

whom it was addressed. (*Id.* at PAGEID #460; McDowell Statement, ECF No. 72, PAGEID #469.)

Burke gives conflicting explanations for why she opened Plaintiff's legal mail. In her statements to Sgt. Johnson, Burke stated that she "[did] not recall any specifics" of the May 12 and June 15 incidents, "but allegedly, I mistakenly opened legal mail for a Rico Hairston. I apologize profusely for any error made and will pay closer attention to opening mail moving forward." (Johnson Report, ECF No. 72, PAGEID #460). As for the June 21 incident, Burke stated, "It has been stated that I opened legal mail for Rico Hairston but I do not recall doing so. If I did, it was in error. I apologize for any inconvenience and will be more attentive in the future." (*Id.*, PAGEID #461.)

However, during her sit down/oral reprimand with Sgt. McDowell, "Burke stated that she did in fact open up the legal mail because it came from a court system. She went on to say that she was taught on her initial job training that it was a matter of public record and not subject to client confidentiality so it was to be opened and searched." (McDowell Statement, ECF No. 72, PAGEID #469.) Moreover, Burke informed Sgt. McDowell that "she had opened such mail in the past on numerous occasions. She further went on to say that other CSCs handled such legal mail in the same manner and they should be notified also, to make sure it did not re-occur, as she was not the only one trained in such a manner from Deputy staff when she started her position." (*Id.*)

Sgt. McDowell sent an email to a number of correctional facility staff members on June 16, 2017. (Email, ECF No. 72, PAGEID #470.) The email emphasized that regardless of whether legal mail came from an attorney or a court system, legal mail may not be opened except

by deputy staff in front of the inmate to whom it is addressed. (*Id.*) Burke was a recipient of this email, which predated Burke's opening of Plaintiff's legal mail on June 21, 2017. (*Id.*)

In support of its Motion for Summary Judgment, FCSO also submits sworn interrogatory answers by Burke. (ECF No. 90, PAGEID #591–98.) In her interrogatory answers, Burke states, "I know that AR 815 governs the opening of legal mail" and "I will testify that AR 815 governs the opening of legal mail. There is no other custom or practice." (*Id.* at PAGEID #593.) A copy of FCSO's written policy numbered AR 815, effective January 4, 1993, is attached to her interrogatory answers; it requires that "[m]ail between any prisoner and any court of law, lawyer, public service law office, law school legal clinic, or any office or official of the federal, state, or local government . . . be opened and inspected for contraband only in the presence of the prisoner to whom the mail is addressed." (*Id.* at PAGEID #597.) Burke also states "I was trained on the opening of legal mail" but does not describe the substance of that training. (*Id.* at PAGEID #560.)

Burke's interrogatory answers also refer to an incident in which she was reprimanded "for opening a letter to the plaintiff from the IRS because the policy considered it to be legal mail." (*Id.* at PAGEID #592.) Her answers do not indicate when this incident occurred; but Plaintiff indicates in his briefing in support of his Motion for Judgment against Burke that "[Burke] again opened my legal mail a fourth time (mail from the Internal Revenue Service) and mail from the Franklin County Clerk of Courts. Both incidents took place after this lawsuit was filed (August 1st, 2017, November 9th, 2017)." (Pl.'s Reply at 3, ECF No. 91.)

## II. PLAINTIFF'S MOTION FOR JUDGMENT, COSTS, AND DAMAGES

Plaintiff's motion asks that the Court execute the partial summary judgment in Plaintiff's favor against Burke as to the June 21, 2017 mail opening incident. (ECF No. 87.) Specifically, he asserts that he is entitled to costs, economic damages, and punitive damages totaling $550,000

from Burke, but seeks to collect this amount through indemnification from FCSO.  (*Id.* at 1.)

Plaintiff states that he previously submitted evidence of his damages (citing ECF No. 56–57), but

a review of those documents reveals primarily a list of grievances against FCSO, few of which

are related to the opening of legal mail outside his presence.  Although Plaintiff asserts that

FCSO staff retaliated against him because he commenced this lawsuit, there are no retaliation

claims before the Court.  The only relief quantified by Plaintiff is as follows:

- Postage from July 2017 to May 2018 of $500;

- Court costs and filing fees of $350.00;

- Process and service fees of $16.00;

- Jail calls to Clerk's Office costing $200.00;

- Copies costing $700.00;

- Pain and suffering in the amount of $8,830 (it appears Plaintiff arrived at this figure by multiplying the sum of the previous costs by 5).

(Pl.'s Notice, ECF No. 57 at 11.)  These documents also "demand" compensatory damages of

$50,000 and punitive damages of $500,000, but Plaintiff does not explain how he arrived at these

figures.

There is insufficient evidence before the Court to award the $550,000 in damages sought

by Plaintiff at this time.  Moreover, judicial economy would be best served by determining the

appropriate amount of damages for Burke's June 21, 2017 violation during a single trial rather

than evaluating damages on a piecemeal basis.  For these reasons, Plaintiff's Motion should be

denied without prejudice to renewal at the resolution of Plaintiff's remaining claims.

## III.    FCSO's MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**B.  Standards Governing Inmates' Legal Mail**

"A prisoner's right to receive mail is protected by the First Amendment . . . ."  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).  The protection is heightened when the incoming mail is legal mail.  *Id.*  at 874.  Prison officials may open and inspect a prisoner's "legal mail" only in the presence of the prisoner "in accordance with appropriately drafted and uniformly applied regulations."  *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)).  Prison policy or other regulations may, therefore, prohibit the opening of legal mail outside the presence of the prisoner.  In the alternative, the United States Court of Appeals for the Sixth Circuit Court has approved an opt-in system in which prison officials may open any mail outside a prisoner's presence unless the prisoner has affirmatively requested that mail sent by a court or counsel be opened only in the prisoner's presence.  *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), cert. denied, 507 U.S. 973 (1993).  The Court approved that system as a way to balance the prison's needs against the prisoner's rights but stressed that an opt-in system would be constitutionally sound only if prisoners received written notice of the policy.  *Sallier*, 343 F.3d at 874.  Accordingly, when a prison official is on notice, either by virtue of prison policy or regulation or prisoner request, the official may not open legal mail outside the prisoner's presence.  "[M]ail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise" or when prison policy or regulation provides the same protection to all prisoners in a facility or system.  *See id.* at 877.

Government officials who perform discretionary functions are generally shielded from liability for damages so long as their conduct does not violate a constitutional or statutory right that was "clearly-established" and "of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "In determining whether a constitutional right is clearly established at the time of the actions in question, the Court must "'look first to the decisions of

the Supreme Court, then to decisions of [the Court of Appeals] and other courts within our circuit, and finally to decisions in other circuits.'" *Sallier*, 343 F.3d at 878 (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)).

A governmental entity cannot be held responsible for a constitutional deprivation by its employee or official unless the deprivation is directly causally linked to a governmental policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000). "A court's task is to identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the violation." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784–85 (1997). Nevertheless, "an act performed pursuant to a 'custom' that ha[s] not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryant Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To establish governmental liability under the widespread-practice theory, however, the "custom must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507–08 (6th Cir. 1996).

**C.     FCSO is not entitled to summary judgment.**

When considering Plaintiff's earlier motion for summary judgment, the Court concluded an issue of fact remained as to whether FCSO had an unofficial policy or custom of opening prisoners' legal mail outside their presence such that FCSO could be held liable under *Monell*. (Order at 6, ECF No. 84.) While FCSO now submits additional evidence in the form of its written legal mail policy and Burke's interrogatory answers, this additional evidence does not eliminate the previous issue of fact. As the Undersigned previously stated:

> [I]t is clear from the investigation report and statement submitted by Defendants in opposition to summary judgment that there is a question of fact as to whether the FCSO really did have such a policy. Although Sgt. McDowell's oral reprimand of Burke and email to other staff indicate that FCSO's policy was not to open legal mail outside the presence of the inmate, Burke's statement to Sgt. McDowell indicates that she and other mail room staff received training to the contrary—that mail from courts was not subject to attorney-client confidentiality and therefore should be opened and searched.
>
> As noted in a previous Report and Recommendation, Plaintiff could succeed on his claim against the FCSO by proving "a practice at the jail of opening prisoner legal mail outside the prisoners' presence that had become so widespread as to have become a custom with the force of law." (ECF No. 54 at 6.) Burke's report to Sgt. McDowell is evidence of a widespread practice that violates prisoners' First Amendment rights. But before the Court can decide Plaintiff's claims against the FCSO, the fact-finder will need to resolve the discrepancy between the policy as reported by Sgt. McDowell and the practice as reported by Burke. Because Plaintiff has not identified undisputed facts establishing FCSO's widespread practice of opening legal mail from court systems, Plaintiff is not entitled to summary judgment against the FCSO.

(R. & R. at 6–7, ECF No. 73.) Just as Plaintiff had not identified undisputed facts establishing FCSO's widespread practice of opening legal mail from court systems, FCSO has not identified undisputed facts that would prevent Plaintiff from establishing the existence of such a policy at trial. And while Burke's interrogatories state that she was "trained on the opening of legal mail," and that she will testify that "there *is* no other custom or practice" other than AR 815 (emphasis added), these statements do not preclude her having been trained to open legal mail from courts outside the inmate's presence, or preclude the existence of such a custom or policy in the past. (ECF No. 88 at PAGEID #560.) Plaintiff may still rely at trial on Burke's previous statement to Sgt. McDowell that she and other employees had been trained to open mail from courts because it was a matter of public record. Nor does the existence of a written policy governing legal mail preclude the existence of a contradictory unwritten policy or custom. Thus, issues of fact preclude summary judgment for FCSO.

## IV.    PLAINTIFF's MOTION TO COMPEL DISCOVERY

The discovery period closed on January 15, 2019.  (Scheduling Order, ECF No. 67.)  On February 20, 2019, the Court extended the discovery deadline to March 18, 2019 for the limited purpose of allowing Defendants to complete their responses to Plaintiff's already-served, timely interrogatories and requests for production of documents.  (Order, ECF No. 80.)  Defendants completed their responses on March 15, 2018.  (Letter, ECF No. 88, PAGEID #574.)  On March 28, 2019, Plaintiff filed a motion to compel further responses to the already-served written discovery requests and to compel the depositions of FCSO and Burke.  (ECF No. 86.)

### A.    Depositions

As to the requested depositions, Plaintiff's Motion is **DENIED**.  The discovery period closed on January 15, 2019, with the exception of FCSO's outstanding responses to Plaintiff's written discovery (the deadline for which also passed on March 18, 2019).  Plaintiff did not request depositions of FCSO or Burke until after those deadlines.  Having shown no good cause for waiting until the close of discovery to request depositions, Plaintiff will not now be permitted to depose Defendants.

### B.    Other Legal Mail Grievances (RFP 1, Interrogatory 4)

Plaintiff also seeks to compel further responses to his written discovery requests to FCSO.  First, FCSO objected outright to Plaintiff's requests for "any and all complaints in regards to legal mail made by inmates or staff in the past 10 years" and "all grievance reports/complaints from inmates regarding the improper handling of their legal mail from the year '2003' till '2018.'"  (RFP 1, Interrog. 4, ECF No. 88, PAGEID #566–67.)  FCSO objected to producing any responsive documents because the document request is "onerous and unduly burdensome.  Complaints are not kept by type and it would require a search of individual inmate files."  (*Id.* at PAGEID #566.)  FCSO further objected to the interrogatory because "[g]rievances

are not maintained by type.  Grievances are only maintained in individual inmate files.  It is not

possible to search individual files for such grievances.  Such a request is unduly burdensome."

(*Id.* at PAGEID #567.)  In FCSO's opposition brief, it also asserts that the FCSO maintains

inmate records for only four years; it is therefore impossible to produce responsive documents

for the full date ranges requested by Plaintiff.  (Defs.' Resp. at 2, ECF No. 88.)  Even so, FCSO

estimates it would have to individually review over 100,000 inmate files over the most recent

four-year period to respond to Plaintiff's requests.  (*Id.*)

As described by FCSO, responding to Plaintiff's grievance requests would certainly be

onerous and burdensome.  However, the Court is unable to discern at this time whether the

burden would be undue.  The FCSO's legal mail practices are at the heart of this litigation and

Plaintiff is entitled under Fed. R. Civ. P. 26(b)(1) to relevant discovery that is proportional to the

needs of the case.  The proportionality analysis is hindered, however, because (1) as discussed

*supra*, Plaintiff has not adequately identified or quantified his damages arising from the opening

of his legal mail outside his presence; and (2) FCSO has not provided adequate evidence of the

burden involved.  The only sworn statements regarding burden are contained in FCSO's answer

to interrogatory 4, stating "[g]rievances are not maintained by type.  Grievances are only

maintained in individual inmate files.  It is not possible to search individual files for such

grievances."  (ECF No. 88, PAGEID #566.)  The assertions as to the timeframe for file retention

and the number of files to be searched are contained only in FCSO's opposition brief and are

unsupported by a declaration or affidavit.  Thus, the Court cannot evaluate the proportionality of

Plaintiff's grievance-related requests at this time.

The Undersigned is also skeptical that FCSO does not maintain records of grievances in a

centralized location outside of individual inmate files.  Even if the FCSO's description of its

filing system is accurate, FCSO cannot escape its discovery obligations simply because its files require individual review. *Dunn v. Midwestern Indem.*, 88 F.R.D. 191, 197–98 (S.D. Ohio 1980) (parties may not avoid compliance with Fed. R. Civ. P. 34 by using a record-keeping system that makes it unduly difficult to locate relevant records).

## C.      Legal Mail Training (RFP 5, Interrogatories 5–6, 11)

Plaintiff seeks the number and names of "employees [who] were trained by the same employee as Burke." (ECF No. 88, PAGEID #567.) FCSO objects to this request on similar grounds, namely that it would "require a manual review of the personnel files of every current and past employee to determine who their training officers were." (Defs.' Resp. at 4, ECF No. 88.) However, FCSO has not attempted to quantify the number of files requiring review or the time or expense involved.

Plaintiff also seeks "the names of all employees trained that mail from courts is public record." (Pl's Mot. at 2, ECF No. 86; RFP 5, ECF No. 88, PAGEID #566.) FCSO objects to this request as improperly assuming a policy or practice that was not authorized by FCSO. (*Id.*) However, this response does not comply with Fed. R. Civ. P. 34(b)(2)(C), which requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." FCSO does state in its opposition brief that "there are no names of employees trained that mail from courts is a public record as characterized by Plaintiff." (Defs.' Resp. at 3, ECF No. 88.) Yet, there remains Burke's statement to Sgt. McDowell that she and others were trained in this manner. Given its objections to Interrogatories 5–6, it appears that FCSO has not inquired into the substance of training of other employees and likely lacks a factual basis for making this assertion.

Again, the extent to which other employees received similar training described by Burke in her statement to Sgt. McDowell is a central issue in this case and Plaintiff is entitled to

relevant, proportional discovery. But again, the Court cannot evaluate the proportionality of these requests without further information as to Plaintiff's damages and the burden of responding on FCSO.

Finally, Plaintiff seeks "an audio or video recording of Burke's training she received." (Pl's Mot. at 2, ECF No. 86; Interrog. 11, ECF No. 88, PAGEID #568.) FCSO has already answered this interrogatory, stating "[n]o such audio or video exists." (ECF No. 88, PAGEID #569.) It therefore appears there is no further information to compel from FCSO regarding this request.

**D.   FCSO's Awareness and Approval of Opening Legal Mail Outside Inmates' Presence (Interrogatories 7–10)**

Plaintiff's Interrogatory 7 and 8, respectively, ask, "[w]ere you aware that the [FCSO] carried a custom of opening mail from courts because 'it was public record?'" and "[w]as it your understanding that mail from courts was public record?" (ECF No. 88, PAGEID #568.) Interrogatory 10 and 11, respectively, ask, "[w]ho approved the custom of opening legal mail from courts? Can you list their names?" and "[w]ho approved the training on the procedure to open legal mail from courts?" (*Id.*) FCSO objected to Interrogatories 7–9 as improperly "presum[ing] such a policy existed. AR 815 is the only policy regarding the opening of legal mail" and stated in response to Interrogatory 10 that "AR 815 was promulgated by the Franklin County Sheriff." (*Id.*) These answers again refer to FCSO's current policy and do not address the time period in which Plaintiff's legal mail was allegedly opened outside his presence. If, in fact, FCSO conducted an inquiry of its employees and determined that there was never a practice of opening legal mail outside inmates' presence (despite Burke's statements to the contrary), it should have so stated. But FCSO's objections to other requests based on undue burden make it

unlikely that it conducted this inquiry. Plaintiff may be entitled to further responses to these interrogatories if such an inquiry would be proportional to the needs of the case.

**E.    Next Steps**

Before the Court can evaluate the proportionality of Plaintiff's requests, the Court requests that Plaintiff identify and quantify his damages arising from the opening of his legal mail outside his presence. For instance, he has not asserted that his legal mail was damaged in any way, that he was delayed in receiving his legal mail such that his access to courts was hindered, or that an FCSO employee accessed privileged information. Although Plaintiff argues that FCSO staff retaliated against him in various ways as a result of his filing this lawsuit, no retaliation claims are currently before the Court, and injuries suffered as a result of retaliation do not qualify as damages caused by FCSO's alleged First Amendment violations related to the opening of Plaintiff's legal mail. In other words, before the Court can compel discovery in Plaintiff's favor, Plaintiff must identify how, and in what dollar amount, he was harmed by the mail opening itself.

Further, the Court requires additional evidence from FCSO (in the form of a declaration or affidavit) as to the structure of its grievance and training filing system, how long grievance and training records are retained, how many files would need to be reviewed to respond to Plaintiff's requests, and an approximate cost to complete the review. Depending on the time and expense required to review all of FCSO's grievance and training files, the Court may limit Plaintiff's request to a particular timeframe or to a random sample of FCSO's files to ensure proportionality.

As an alternative to a ruling on Plaintiff's Motion to Compel, the Court also invites the parties to consider whether court-facilitated mediation would be fruitful at this juncture. The

Court would consider appointing counsel for Plaintiff for the limited purpose of the mediation session. If the parties are interested in mediation, they should contact chambers.

## V.     DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that Plaintiff's Motion for Judgment, Costs, Economic Damages, and Punitive Damages (ECF No. 87) be **DENIED without prejudice to renewal** and that FCSO's Motion for Summary Judgment (ECF No. 90) be **DENIED**. It is further **ORDERED** that, to the extent Plaintiff seeks to compel depositions of FCSO and Burke, Plaintiff's Motion to Compel Discovery is **DENIED**; otherwise, the parties must either supplement their submissions so that the Court may rule on the remaining portions of Plaintiff's Motion to Compel Discovery, or contact the Court to request Court-facilitated mediation in lieu of a ruling.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE
